IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH PHILLIPS, #160634 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. JFM-04-3674 |
| MARY ANN SAAR, et al. | * | |
| Defendants. | | |
| | ****** | |

**MEMORANDUM**

I. Procedural History

Plaintiff is a inmate currently housed at the Eastern Correctional Institution. He filed this 42 U.S.C. §1983 civil rights action alleging that when he was housed at the Maryland Correctional Institution in Jessup, Maryland ("MCI-J"), his life was placed in danger and correctional officials took no preventive action, resulting in his being stabbed on the left side of the face at the MCI-J courtyard on May 30, 2003. Plaintiff further claims that he was then transferred to the Maryland Correctional Training Center ("MCTC") for not keeping silent. Finally, he complains that: (i) he was denied information to support his complaint; (ii) his legal mail was stopped; and (iii) his right to present his grievance before an impartial hearing officer and to obtain counsel was undermined.

Defendants have filed a motion to dismiss or in the alternative, motion for summary judgment. Paper No. 20. Plaintiff has filed an opposition response thereto and a motion for summary judgment. Paper Nos. 27 & 33. The case is ready for consideration and may be determined on the pleadings. *See* Local Rule 105.6. (D. Md. 2004). Based upon a review of the

materials provided this court, defendants' summary judgment motion shall be granted and plaintiff's summary judgment motion denied.[1]

## II.  Summary Judgment Standard

To survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *See Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Only disputed issues of material fact will preclude the entry of summary judgment.  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Analysis

### Failure to Protect

According to the vague allegations made in the complaint, MCI-J Chaplain Bellamy and former Assistant Warden Hayes allegedly put plaintiff's life in danger when: (i) Bellamy lied, which caused plaintiff to go against a prison boycott; and (ii) Bellamy and Hayes knowingly failed to ensure plaintiff's safety.

---

[1] Plaintiff's summary judgment motion is essentially comprised of arguments previously presented to this court in his complaint and opposition.

To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must present evidence that a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

The record establishes that there was no information communicated to MCI-J officials which would have placed them on notice that plaintiff was in danger from inmate Victor Coleman or others prior to the alleged May 30, 2003 assault. Chaplain Bellamy denies having knowledge of information that plaintiff was in danger prior to the assault. In a letter[2] sent to former MCI-J Assistant Warden Hayes dated May 13, 2003, plaintiff expressed his position on various conflicts related to agreements between his religious group and MCI-J officials related to fund-raising efforts and discussed a sum of monies allegedly sent to inmate Coleman.[3] Ex. 6. Plaintiff mentions that

---

[2] In his opposition response plaintiff for the first time states that while en route to eat lunch at MCI-J on an unspecified date, he asked former Assistant Warden Hayes for help with a number of problems. Paper No. 27 at 2. Plaintiff claims that at this time he first "told Defendant Hayes about Victor Colbert" and that Chaplain Bellemy was "told in specific detail by plaintiff of the growing out of control threat and danger he caused between inmate V. Colbert and other inmates." *Id.* Plaintiff's statements, however, indicate that the alleged conversation with Hayes and Bellamy primarily related to the freezing of the account for the MCI-J Lost-Found Nation of Islam group and Chaplain Bellamy's actions related thereto. In any event, there are no particular allegations which demonstrate that plaintiff made specific requests for protection or conveyed any information to either Hayes or Bellamy that his continued housing at MCI-J general population placed him in danger.

[3] The nature of "fund-raising" and monetary funds is never clearly defined in the complaint. Gleaning information from various duplicate exhibits it appears that: (i) plaintiff was the minister for the Lost-Found Nation of Islam at MCI-J, which was small and lacked resources to pay for holiday observances or dietary meals at MCI-J; (ii) Chaplain Bellamy worked with plaintiff's group and an outside vendor who was willing to donate funds for the purchase, through the institutional commissary, of items to be sold to inmates to raise funds; (iii) the sale was successful and a small percentage of monies earned was retained by MCI-J to defray commissary processing costs; and (iv) the expenses of the Lost-Found Nation of Islam's holiday observances were paid, and a small surplus was placed in the organization's account. Paper No. 20, Ex. 1 & Ex. 2 at Bellamy Decl. While it is not germane to the issues raised in this complaint, plaintiff takes issue with Chaplain Bellamy's explanation of the fund-raising practices. The court observes he has filed a new § 1983 civil rights action which challenges the alleged MCI-J policy of forcing religious groups to give a percentage

Chaplain Bellamy's actions had "created a rumor throughout MCI-J that I am stealing money".... and "added to those who hold ill felling about me unconsciously crossing the demarcation of the boycott." *Id*.  The letter does not, however, directly communicate any threat of harm by which Hayes would infer that a risk of harm existed between plaintiff and other MCI-J inmates.

Retaliation

Plaintiff claims that he was transferred to another medium security prison for refusing to remain silent about the reasons why he was stabbed.   While retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983, *see American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993), the plaintiff alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Plaintiff's claim of retaliation is not supported by the materials before the court.  On May 30, 2003, plaintiff was observed with a wound to his left eye, but claimed to have fallen, not to have been attacked.  Because his injuries were not consistent with a fall, he was initially assigned to involuntary protective custody and then placed on administrative segregation at MCI-J.  Less than one month later he was transferred to MCTC. He has failed to rebut the record evidence which establishes that he was placed on administrative segregation pending his transfer to any medium security facility and his transfer from MCI-J to MCTC occurred in accordance with policy and procedure and was done due to safety concerns arising out of the stabbing incident.[4]  Paper No. 20,

---

of their fund-raising income to help pay Chaplain Bellamy's salary. *See Phillips v. Filbert, et al.*, Civil Action No. JFM-05-2809 (D. Md. 2005).

[4]   Plaintiff grieved his transfer to the Inmate Grievance Office.  The hearing officer concluded that plaintiff was transferred from MCI-J to MCTC for security reasons after he failed to  provide MCI-J officials

Exs. 4-6. Plaintiff has failed to show that the transfer was punitive in nature or represented an attempt to impede his exercise of constitutional rights.

Access to Courts

Plaintiff claims that defendants' actions denied him access to the courts in that:(i) he was denied information about the stabbing incident; and (ii) his legal mail and access to legal resources was impeded.

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation. *Id.* at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id.* at 353. Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

MCTC Warden Stouffer denies impeding plaintiff's access to mail or to information to which he was entitled. He further denies that he prevented plaintiff from filing a complaint or interfered with his efforts to obtain an attorney.

---

any information regarding the identity of his assailant. Paper No. 20, Ex. 1.

Plaintiff has failed to rebut defendants' documents and demonstrate that defendants' alleged actions impeded his ability to litigate his claims. Indeed, he has been able to file remedies, grievance appeals, state court claims, and federal complaints. Consequently, his Fourteenth Amendment claims are subject to dismissal.[5]

## IV. Conclusion

For the aforementioned reasons, defendants' motion for summary judgment shall be granted. Judgment shall be entered in favor of defendants and against plaintiff.[6] A separate Order follows.

Dated: November 2, 2005            /s/
                                    J. Frederick Motz
                                    United States District Judge

---

[5] Plaintiff seemingly takes issue with the decision of Administrative Law Judge ("ALJ") Brian Zlotnick. He makes a conclusory claim that the findings were biased. Because the allegation fails to set out a colorable constitutional claim and because the ALJ is entitled to absolute immunity, the claim shall be dismissed.

[6] On August 15, 2005, plaintiff filed a motion to amend, alleging that "defendants' agencies" continue to deny him medical treatment and the right to practice his religious beliefs due to the filing of this lawsuit. Paper No. 30. Attached to the motion is a remedy concerning plaintiff's medical assignment to a single cell at the Eastern Correctional Institution; a medical assignment form noting plaintiff's assignment off courtyard and gym; and copies of prescriptions. *Id.* Plaintiff provides no particularized allegations, nor does he name defendants who have allegedly retaliated against him. Leave to amend or supplement at this late date shall be denied. Finally, on October 31, 2005, the Clerk received for filing plaintiff's motion to compel discovery. Paper No. 34. Plaintiff complains that he submitted interrogatories and a request for documents, but defendants have failed to provide him discovery. *Id.* This eleventh hour motion shall be denied. Discovery was not ordered by this court. *See* Local Rule 104.4. (D. Md. 2004) (unless otherwise ordered by the court, discovery shall not commence and disclosures need not be made until a scheduling order is entered). Further, there is no showing that the failure to respond to plaintiff's particularized discovery requests rendered him unable to file an opposition to defendants' motion.